UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TERRI LAUCHLE | ) | CASE NO: 4:22-cv-00533 |
|  | ) |  |
| Plaintiff, | ) | JUDGE MATTHEW J. BRANN |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED PARCEL SERVICE, INC. | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## DEFENDANT UNITED PARCEL SERVICE, INC.'S
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Defendant United Parcel Service, Inc. ("UPS") explained why Plaintiff Terri Lauchle ("Plaintiff")'s claims of sex discrimination and religious discrimination related to her termination from UPS should be dismissed. To wit:

- Substantial evidence (including but not limited to Plaintiff's own contemporaneous writings and sworn testimony) clearly demonstrates that Plaintiff was terminated for a legitimate, nondiscriminatory reason, namely her repeated, grossly insubordinate refusal to comply with UPS's face covering policy. Plaintiff refused to wear a mask or pursue an exemption from the masking policy through the ADA

1

accommodation process, despite being advised by both UPS management and her union that she should apply for an ADA accommodation from the policy if needed;

- Plaintiff's sex discrimination claims are without merit because of a male employee who is a comparator on all fours—Jared Edkin—received the exact same discipline for the exact same offense;

- Plaintiff never sought a religious accommodation and has provided no evidence to demonstrate that UPS's legitimate, nondiscriminatory reason for terminating her employment was pretext for discrimination due to Plaintiff's religion (or sex);

- Plaintiff's lawsuit is a clear attempt to relitigate the binding decision of the arbitration panel that upheld her termination (after initially reinstating her and giving her yet another chance to work with UPS to comply with company rules) through the bargained-for grievance process utilized by UPS and its union employees pursuant to the collective bargaining agreement;

- Plaintiff's claims are preempted under the National Labor Relations Act (NLRA) given Plaintiff's repeated assertions that her union advocacy and advocacy for workplace safety were factors that motivated her termination.

2

Plaintiff's Response in Opposition to Summary Judgment (hereinafter "Response") fails to seriously engage with these legal arguments. Instead, the Response makes factual allegations clearly controverted by evidence, attempts to relitigate a discovery motion this Court previously ruled upon, and raises irrelevant arguments that do not have anything to do with her actual legal claims. For these reasons, as discussed further below, the Court should grant UPS's Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

## A.    Plaintiff's Response Makes Several Factual Statements Clearly Controverted by Evidence (Including Her Own Testimony)

As explained below, Plaintiff's Response fails to substantively respond to UPS's legal arguments regarding her claims of sex discrimination and religious discrimination. However, the Response also makes several statements that are contrary to the clear evidence in the record—including Plaintiff's testimony and documents written by the Plaintiff.

For the most part, the statements made in Plaintiff's Response are unsupported allegations that should not be considered by the Court at all. Plaintiff does not cite to any evidence in the record for the majority of the factual allegations in her Response, and her response to UPS's Statement of Undisputed Facts cites to no evidence for any of its responses—leaving UPS's Statement of Undisputed Facts completely undisputed by any record evidence that the Court can consider in

evaluating the present Motion for Summary Judgment, as explained in an opinion

adopted by a Middle District of Pennsylvania Court last month:

> "[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F.Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, N.A.*, 254 F.App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co. of Newark N.J. v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982*); see Sunshine Books, Ltd. v. Temple Univ.*, 697 F.2d 90, 96 (3d Cir. 1982).

*Nives v. Dep't of Corr.*, 2023 U.S. Dist. LEXIS 223722, at *3–4 (M.D. Pa. Dec. 15,

2023). However, even setting aside the fact that almost none of Plaintiff's Response

is supported by citations to record evidence, the statements from Plaintiff's Response

identified below are clearly, unequivocally false.

Plaintiff's Response claims that she did not have the option to apply for an

ADA accommodation at UPS. Both before her termination and throughout the

grievance process, Plaintiff was told repeatedly by UPS management personnel, as

well as her union representatives, that she had three different options to remain in

compliance with UPS's face covering policy—she could wear a face mask, she could

wear a face shield that did not directly touch her face, or she could apply for an ADA

accommodation through the process available to all UPS employees. (*See, e.g.,* Doc.

29, at ¶¶ 28–29, 36, 38, 55, 61 and cited supporting documents). Plaintiff admits

that she refused to engage with any of these options, but (perhaps recognizing that UPS's voluminous efforts to provide her with alternatives completely undermines her claim that the Company was out to terminate her) her Response claims that "the Defendant told [Plaintiff] that they would advise her that they could not reasonably accommodate her request not to wear a mask or face shield and that she would be terminated." (Doc. 34, at Page 13 of 18). This is false, and all the evidence in the record disputes this statement. As cited above, UPS told Plaintiff numerous times that she could apply for an ADA exemption, and even the arbitration panel that initially reinstated Plaintiff's employment told her to seek an ADA accommodation. Plaintiff refused to do so, and her attempt to claim that it would have been futile without even trying or producing any supporting evidence should be dismissed by this Court.

Plaintiff's Response also falsely claims that UPS has admitted that it enforced its face covering policy a discriminatory fashion. (Doc. 34, at Page 10 of 18). This is both false and a gross mischaracterization of UPS's explanation of the history of its face covering policy. UPS's face covering policy was implemented on a company-wide scale in April 2020. From April 2020 through February 2021, employees at the UPS Williamsport were permitted to essentially excuse themselves from the policy by filling out a form alleging that they could not wear a mask for

medical reasons—no medical evidence required.[1] (*See* Doc. 29, at ¶¶ 17–19 and cited supporting documents). In February 2021, after an audit revealed that the policy had been enforced in a lax manner (including as to Plaintiff, who did not wear a mask without issue during the previous 10 months), UPS informed all employees that it would be enforcing the face covering policy, and that any requests for medical accommodation moving forward would need to be verified through the company's existing ADA accommodation process. (*Id.* at ¶¶ 23–24, 28 and cited supporting documents). At no time did UPS enforce its face covering policy discriminately against employees with regard to gender, religion, or any other protected class. The company had policy that applied uniformly to all employees at all times, even as that policy changed when the Company decided to modify the way that employees could request exemptions to the policy. Plaintiff's claims to the contrary are not based on evidence and should be dismissed.

Accordingly, Plaintiff's factual statements that have no record support and are controverted by record evidence should not be considered by this Court in evaluating UPS's Motion for Summary Judgment.

---

[1] Another falsehood in Plaintiff's response is the claim that this form was a government-issued form from the Commonwealth of Pennsylvania. There is no evidence to support this claim, and reviewing the form shows that to be obviously false. (*See* Doc. 34–3, Page 1 of 3). The form was clearly created internally.

**B.    Plaintiff's Arguments Alleging that She Should be Granted Additional Time to Conduct Discovery Have No Merit and Have Already Been Rejected by this Court**

Plaintiff's Response argues that her case should survive summary judgment because she was not able to complete the discovery that she apparently wished to complete.  This argument is an improper attempt to relitigate Plaintiff's failed second Motion for Extension of Time to Complete Discovery (*See* Docs. 21, 23–24), and should accordingly be dismissed by the Court.

Plaintiff cites to one case—the Eastern District of California case of *Howell v. Liddell*—for the proposition that she should be permitted additional discovery. 2020 U.S. Dist. LEXIS 33914.  That case is completely inapposite to the facts in this case.  In *Howell*, the plaintiff filed a motion for summary judgment more than a month *before* the discovery deadline, causing the defendant's response brief to be due three days before the plaintiff's scheduled deposition.   Under those circumstances, the court in *Howell* appropriately found that the plaintiff's motion for summary judgment should be denied without prejudice as premature because the discovery period had not yet run.  *Id.* at *6–7.  In this case, the present motion for summary judgment was filed after the end of a 14-month discovery period, which included a 3-month extension requested by Plaintiff.  Plaintiff, who was obviously a witness to her own termination and knew the identities of numerous individuals relevant to that process, only requested one deposition, and received responses to

her two written discovery requests. (*See generally* Doc. 23). There is no excuse for any alleged paucity of evidence available to Plaintiff, as implicitly recognized by the Court's prior order denying Plaintiff's second request for extension of time. (*See* Doc. 24).

Because Plaintiff had ample opportunity to conduct discovery but did not, and because this Court has already ruled that discovery in this matter has closed, any reference by Plaintiff to alleged evidence that "would have been brought out" or witnesses that "would have been called" should have no bearing on the resolution of this Motion for Summary Judgment. The discovery process is closed, and there is no evidence in the record that raises a genuine dispute of material fact supporting any of Plaintiff's claims. Accordingly, Plaintiff's claims should be dismissed.

## C. Plaintiff's Irrelevant Arguments that are Totally Unconnected to her Complaint Should be Dismissed by this Court

Plaintiff's Complaint raises two claims (in four total Counts, as each is raised under both state and federal law)—that UPS discriminated against Plaintiff on the basis of her sex and religion. Plaintiff's Response devotes a substantial portion of its length raising arguments that have nothing to do with either of these claims, and those arguments should be dismissed. *See, e.g., Carpenters Health v. Mgmt. Resource Sys. Inc.,* 837 F.3d 378, 384 (3d Cir. 2016) ("A complaint must give defendants 'fair notice' of what claims a plaintiff is raising against the defendants and the grounds upon which the claims rest."); *Achebe v. Bloomsburg Univ. of Pa.,*

2021 U.S. Dist. LEXIS 149550, at *7–9 (M.D. Pa. Aug. 10, 2021) (dismissing claims argued by Plaintiff at the summary judgment stage not raised in her Complaint).

Plaintiff's Response includes discussion regarding her assertion that UPS's initial decision to impose a face covering mandate at the companywide level was not based on a sound understanding or consideration of relevant science.  (*See* Doc. 34, at Page 4 of 18).  This argument was not unanticipated, as Plaintiff's counsel spent the majority of the one deposition Plaintiff decided to take asking not about the Plaintiff or the decisionmaking process behind her termination, but about the scientific and medical justifications for implementing a face covering policy in the first place.[2]  However, the question of whether UPS's choice to require face coverings was the optimal way to protect its workforce from COVID-19 has no bearing whatsoever on whether the decision made by UPS Williamsport management to terminate Plaintiff for gross insubordination was motivated by her sex or her religion.  This Court should disregard Plaintiff's claims about the science behind UPS's face covering policy and dismiss her claims due to a lack of factual support.

---

[2] Although this entire line of questioning was irrelevant, UPS also notes that Plaintiff's allegation that "UPS suddenly implemented a masking policy without any discussion of science whatsoever" has no support in the record evidence. The one person who Plaintiff deposed, Michael Mu, was a Center Manager at the time the face covering policy was implemented.  Accordingly, while he was in local management, he simply received instructions from UPS Corporate explaining that the face covering policy would be implemented—he was not privy to whatever internal deliberation UPS had regarding whether to implement a face covering policy in the first place.

Another completely irrelevant line of argument Plaintiff's response follows is Plaintiff's ongoing battle with her former union, which has apparently continued well beyond the neutral grievance panel upholding her second termination. Plaintiff claims that since her termination from UPS, she has been "harassed" by individuals, specifically naming Eric Kime and referencing an unidentified alleged interaction in a local gymnasium. (Doc. 34, at 6). Plaintiff revealed during her deposition that she had been engaged in a lengthy dispute with her union for months after her termination, that she had run for leadership in the local union after her termination, that her campaign had involved picketing with family members outside UPS production facilities and holding signs with derogatory slogans directed at individual union leadership, and that at times things had gotten contentious to the point where union leader Eric Kime filed criminal charges against Plaintiff related to an alleged shoving. (*See* Doc. 29-1, at Page 173–175; 202–203 of 744 (Pl. Dep.)). UPS did not reference any of this in its Statement of Undisputed Facts, because none of it is relevant to Plaintiff's claims—Eric Kime is a union leader, not UPS management, and nothing related to Plaintiff's protracted fight with her former union has anything to do with the question of whether UPS took an adverse action against her because of her sex or religion. Plaintiff's referencing her own altercations with her union (an entity that is not a party to this lawsuit) are completely irrelevant.

Accordingly, this Court should not consider Plaintiff's irrelevant arguments unrelated to her employment discrimination claims when ruling upon UPS's Motion for Summary Judgment.

### D.    Plaintiff's Sex Discrimination Claims are Without Merit

Plaintiff's Response provides no credible facts or argument that would raise a genuine dispute of material fact in support of her sex discrimination claim. On the contrary, her Response only highlights the spurious nature of this claim.

UPS's Motion explained in detail why Plaintiff's sex discrimination claim is fundamentally flawed. Plaintiff claims that she believes UPS punished her disproportionately for her gross insubordination because she was a woman. However, of the three people who were grossly insubordinate at UPS's Williamsport facility related to the face covering policy and were therefore subject to termination, two (including Plaintiff) were women and one was a man. Jared Edkin, a male coworker who, like Plaintiff, openly refused to comply with the face covering policy, went through the exact same termination process—his termination and every subsequent step of the grievance, reinstatement, and second termination process all happened at the exact same time and in the exact same manner as Plaintiff's. (*See* Doc. 29, at ¶¶ 75–85 and cited supporting documents). And of the thirteen people that Plaintiff alleges were treated more favorably than she with regard to the face covering policy, five were women. (*Id.* at ¶¶ 104–106 and cited supporting

11

documents). These facts taken together undermine any claim that women and men were not subjected to the same standards with regard to UPS's face covering policy.

UPS terminated Plaintiff for a legitimate, nondiscriminatory reason. Plaintiff, like Jared Edkin and her daughter—and unlike the other employees in UPS's Williamsport facility—was grossly insubordinate and repeatedly refused to comply with the company's face covering policy in any way. This insubordination persisted even in the wake of an initially favorable arbitration ruling that reinstated Plaintiff's employment on the express condition that she comply with the policy or seek an accommodation moving forward.[3]  (*See id.* at ¶ 55 and cited supporting document).

Plaintiff's Response admits all of the above facts, undermining any argument that her termination had anything to do with her sex. In response to UPS's evidence demonstrating that its face mask policy was applied to both men and women without regard for sex, Plaintiff offers only her own speculation:

> All of this begs the question as to why they went after Terri Lauchle for this policy as well as her daughter and son-in-law. Part of that reasoning, according to the Plaintiff is based on her sex.

(Doc. 24, at Page 10 of 18). Plaintiff's naked supposition without any supporting evidence is not sufficient to survive summary judgment. *See, e.g.*, *Mitchell v. Co.*

---

[3] Although Plaintiff's Response tried to deny (without supporting evidence) that UPS terminated her for a legitimate, nondiscriminatory reason, she actually admits that UPS's proffered reason is legitimate and nondiscriminatory. Plaintiff's Response states: "UPS did not have any legitimate nondiscriminatory reason for terminating Plaintiff other than their assertion that she was being difficult and obstinate." (Doc. 34, at Page 16 of 18). Another way of phrasing the allegation that Plaintiff was "difficult and obstinate" is that she was grossly insubordinate—the precise reason given for Plaintiff's termination. (*See* Doc. 29, at ¶ 41 and cited supporting documents).

*Silverio*, 2023 U.S. Dist. LEXIS 150809, at *10 (M.D. Pa. Aug. 25, 2023) ("Allegations without the support of evidence are not sufficient to survive summary judgment.") (citing *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018)). Besides this naked assertion that her sex was somehow involved, Plaintiff has provided nothing that would allow a finder of fact to conclude that there was a genuine dispute of material fact about her sex discrimination claim. Accordingly, Plaintiff's sex discrimination claims should be dismissed with prejudice.

### E. Plaintiff's Religious Discrimination Claims are Without Merit

Plaintiff has failed to present any evidence to support her claim that she was terminated because of her religion—either through discovery or in her Response. Accordingly, this Court should dismiss this claim as without merit.[4]

Plaintiff's Response cites to only one fact in support of her religious discrimination claim—that the three people in the Williamsport facility who were terminated for gross insubordination (herself, her daughter, and her future son-in-law) all went to the same church. However, that fact alone is not sufficient evidence for Plaintiff's religious discrimination claim to survive summary judgment. Plaintiff has failed to identify any similarly situated comparator outside of her protected class that was treated disparately to her for comparable conduct, offering only

---

[4] Plaintiff's Response does not dispute the fact (previously directly admitted by Plaintiff's interrogatory responses and during her deposition) that she did not make any request for a religious accommodation that would support a failure to accommodate claim. Accordingly, UPS will not further discuss a potential failure to accommodate claim.

unsupported speculation about one allegedly Muslim employee who record evidence demonstrates did not engage in conduct similar to Plaintiff's gross insubordination. (*See* Doc. 29, ¶¶ 110–115 and cited supporting documents). The record evidence demonstrates that the three individuals terminated for gross insubordination were the only people who consistently refused to put a mask on when confronted by management. (*See id.* at ¶¶ 107–109 and cited supporting documents). Plaintiff admitted during her deposition that multiple members of her church and family who were not grossly insubordinate regarding UPS's face covering policy—including one of Plaintiff's sons and a different daughter and son-in-law—remained employed by UPS without issue two years after her termination. (*See id.* at ¶¶ 11–12 and cited supporting documents).

Plaintiff's response to this point is to offer pure speculation with no supporting evidence. While acknowledging that UPS has continued to employ multiple members of Plaintiff's church (and family), Plaintiff's Response states: "the Plaintiff believes that UPS will discharge these other members [of her church that remain employed by UPS more than 2 and a half years after Plaintiff's termination] once this case is completed." (Doc. 34, at Page 5 of 18). This pure supposition from Plaintiff obviously is not evidence and cannot be considered by the Court in evaluating UPS's motion.

The fact is that there is no evidence that anyone on either side of this conflict considered religion at any point during Plaintiff's termination and the grievance. Plaintiff consistently maintained throughout her termination that she had a *medical* reason not to wear a face covering, and she never made any mention of religion or requested a religions accommodation.  No one at UPS said anything to Plaintiff about religion at any point during the termination process, and numerous members of Plaintiff's church who were not insubordinate remain UPS employees.

Accordingly, as there is no genuine dispute of material fact related to Plaintiff's religious discrimination claims, the Court should dismiss those claims with prejudice.

### F.    Plaintiff's Lawsuit is a Thinly Veiled Attempt to Overturn a Grievance Panel Decision

As explained in UPS's Motion for Summary Judgment, one of the reasons that Plaintiff's lawsuit should be dismissed is because Plaintiff's claims are merely an attempt to overturn the final and binding outcome of her grievance process, including a binding arbitration as proscribed by her CBA.  Plaintiff's Response does not address this argument at all, conceding the argument.  *See, e.g.*, *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 522 (W.D. Pa. 2021) ("A party that fails to address an argument in its brief in opposition to a motion for summary judgment waives that argument.") (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 212 n.2, (2004); *Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704,

711 (3d Cir. 1994); *Fischer v. G4S Secure Sols USA, Inc*., Civil Action No. 10-6792(JBS/AMD), 2014 U.S. Dist. LEXIS 86139, at *46 (D.N.J. June 25, 2014)). Accordingly, Plaintiff's claims should be dismissed.

### G.    Plaintiff's Claims are *Garmon* Preempted

UPS's Motion for Summary Judgment explained that Plaintiff's Complaint is *Garmon* preempted because she alleged during discovery that a motivating factor for her termination was her concerted union activity. Plaintiff's Response fails to sufficiently address this argument. The Response focuses solely on the formal complaint that Plaintiff filed with the NLRB after her initial termination, where she unsuccessfully argued that the union had somehow failed in its duty to represent her. (*See* Doc. 34, at Page 16 of 18).

However, the filing of that complaint is not the reason Plaintiff's claims are *Garmon* preempted. As explained in UPS's Motion and the evidence cited in support, Plaintiff has claimed at multiple points since her termination (including during her deposition testimony) that she believed her union activities motivated UPS to terminate her employment. (*See* Doc. 28, at Page 33 of 37). The NLRA preempts claims where termination is alleged to be motivated by an employee's exercise of rights under Section 7 of the NLRA, including advocating related to issues of workplace safety such as UPS's mask mandate. (*Id.* at Page 31–32 of 37). Accordingly, Plaintiff's claims are preempted and should be dismissed.

16

### H.    Conclusion

UPS did not terminate Plaintiff's employment because she was a woman or because of her religion.  The voluminous evidence on the record amply demonstrates that Plaintiff was terminated because of her insubordinate refusal to comply with UPS's face covering policy, despite being given every opportunity to comply.  Even after being initially reinstated by an arbitration panel and being told *again* that she needed to comply with UPS's face covering policy or formally request an accommodation, Plaintiff refused to do so, taking the position that UPS had to do whatever she wanted without her having to engage with the Company in any meaningful way.  This was gross insubordination, and the few people at UPS's Williamsport facility who behaved this way were terminated, while employees that were not grossly insubordinate were not.  Plaintiff's claims to the contrary are not supported by any evidence, and this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

*/s/S. Joseph Stephens, III*
Nicholas Godfrey
DINSMORE & SHOHL LLP
1300 Six PPG Place
Pittsburg, PA 15222
Telephone: (412) 288-5861
Facsimile: (412) 288-5055
Joshua.link@dinsmore.com

Allison L. Goico (*Pro Hac Vice*)

S. Joseph Stephens, III (*Pro Hac Vice*)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
Allison.goico@dinsmore.com
Joseph.stephens@dinsmore.com

## __CERTIFICATE OF COMPLIANCE WITH WORD COUNT__

     I hereby certify that on January 24, 2024, before submitting Defendant's Reply Brief in Support of Motion for Summary Judgment, I used the word count feature in Microsoft Word to verify the number of words in Defendant's Brief in Support of its Motion for Summary Judgment.  Defendant's Brief is 4,081 words.


                                _s/S. Joseph Stephens, III_____
                                  S. Joseph Stephens, III

                                  *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2024, I filed the foregoing with this Court via ECF, which will serve an electronic copy upon all counsel of record.

s/*S. Joseph Stephens, III*
S. Joseph Stephens, III

*Counsel for Defendant*