IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRI LAUCHLE, | No. 4:22-CV-00533 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNITED PARCEL SERVICE, | |
| Defendant. | |

## MEMORANDUM OPINION

### FEBRUARY 15, 2024

Among the effects of the COVID-19 pandemic, perhaps none were as ubiquitous as face coverings and mandates requiring their use. Those mask mandates posed a simple choice: wear a mask or stay home. The overwhelming majority of individuals opted for the former, even if only begrudgingly, whereas a small, often vocal, minority refused. Plaintiff Terri Lauchle fell into the latter camp, repeatedly refusing to wear a mask as required by her employer, Defendant United Parcel Service. Accordingly, UPS repeatedly sent her home, eventually terminating her employment.

Lauchle then filed suit, claiming that, in firing her, UPS discriminated against her based on her sex and her religion. In reality, this suit is nothing more than a thinly veiled attempt by Lauchle to avoid the consequences of her actions. Because the freedom to do, or not do something does not equate to freedom from resultant consequences, judgment is granted in favor of UPS.

I.  BACKGROUND

   A.  **Undisputed Facts**[1]

Lauchle was employed by UPS as a part-time employee from May 22, 2017 through May 10, 2021.[2] Throughout her employment, Lauchle was a member of the Teamsters Local #764.[3] Accordingly, the terms and conditions of her employment were governed by a Collective Bargaining Agreement.[4] Lauchle is a mother of ten children, six of whom worked for UPS at one point, and two of whom worked for UPS during the pendency of this litigation.[5] Lauchle is a Baptist and her husband is the pastor of the Baptist church she attends.[6] Several of her children and in-laws are also members of Lauchle's church.[7]

On April 6, 2020, in response to the COVID-19 pandemic, UPS implemented a face-covering policy requiring employees working in the company's distribution centers across the United States to wear a mask.[8] The policy provided for the possibility that certain employees would be unable to wear a mask for medical reasons and permitted employees to self-certify that compliance with the policy

---

[1] The factual background is derived from UPS' Statement of Material Facts which the Court has deemed admitted in its entirety by Lauchle. *Infra* Section III.A.
[2] UPS Statement of Material Facts ("SMF"), Doc. 29 ¶¶ 2, 5.
[3] *Id.* ¶ 6.
[4] *Id.* ¶ 7.
[5] *Id.* ¶¶ 8, 10.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 11.
[8] *Id.* ¶ 13.

2

would create an "undue medical hardship."[9] Such employees were not absolved from the need to comply with the policy; UPS would provide those employees with a face shield that did not directly contact one's face to provide protection instead.[10] Lauchle executed the self-certification form and carried it with her at all times while working.[11]

From April 2020 to February 2021, management at the distribution center where Lauchle worked in Williamsport, Pennsylvania accepted the self-certification forms as exemptions from the policy and did not require such employees to wear face shields.[12] After a February 2021 inspection, UPS required local leadership to increase efforts to ensure employees complied with the face covering policy by wearing either a face mask or a face shield.[13] On February 17, 2021, employees were informed that the self-certifications would no longer be considered valid going forward.[14]

That same day, following Lauchle's continued refusal to wear a mask, she was called into a meeting with two supervisors and a union steward where she was informed that she could either wear a face covering or, if there was a genuine medical reason why she could not do so, formally apply for an ADA accommodation through

---

[9]  *Id.* ¶¶ 15, 17-19.
[10] *Id.* ¶¶ 15-16.
[11] *Id.* ¶¶ 19-20.
[12] *Id.* ¶¶ 21, 23.
[13] *Id.* ¶¶ 23-25.
[14] *Id.* ¶ 25.

the standard process available to all UPS employees.[15] Later that day Lauchle contacted her local union president who reiterated that either she needed to wear a face covering or seek an ADA accommodation.[16] Nevertheless, Lauchle repeatedly refused to comply with the policy and, after repeated reminders of her options fell on deaf ears, she was terminated on March 4, 2021 for gross insubordination.[17]

Following receipt of a formal notice of her termination on March 10, 2021, Lauchle filed a grievance through her union seeking to have her termination rescinded.[18] In her grievance form, she alleged that UPS had violated a provision of the CBA which prohibited UPS from terminating an employee without just cause and without following certain procedures.[19] Lauchle did not allege that UPS had violated provisions of the CBA which prohibited discrimination.[20] As part of the grievance process, a meeting was held on March 15, 2021 between UPS management, Lauchle, and union representatives during which Lauchle declined UPS' offer to reinstate her employment if she agreed to comply with the face covering policy.[21] The matter was then referred to a neutral panel, the Pennsylvania Area Parcel Grievance Committee, which conducted a hearing on April 29, 2021.[22]

---

[15] *Id.* ¶¶ 26-28.
[16] *Id.* ¶ 29.
[17] *Id.* ¶¶ 30-40.
[18] *Id.* ¶¶ 41-42.
[19] *Id.* ¶¶ 43-44.
[20] *Id.* ¶ 45.
[21] *Id.* ¶¶ 46-49.
[22] *Id.* ¶¶ 50-53.

The Panel issued an order reducing Lauchle's termination to a time-served suspension. The order reinstating Lauchle's employment explicitly stated that Lauchle was to either comply with the face covering policy or apply for an ADA accommodation.[23]

Following the Panel's decision, UPS reached out to the Lauchle's union and requested that, rather than report to work as normal on May 3, 2021, Lauchle first meet with UPS and union leadership to review the Panel's decision.[24] Lauchle ignored this request and reported to work on May 3 without any face covering, informing her supervisor that she would not wear a face covering or apply for an ADA accommodation.[25] Lauchle was sent home.[26] Later that afternoon, Lauchle met with UPS management and union representatives at which time she reiterated that she would not wear a face covering.[27] Lauchle did not indicate whether she would seek an ADA accommodation.[28] The next day, Lauchle's union informed UPS that she would not seek an accommodation, and that she would report to work on May 5, 2021.[29] The union could not confirm that Lauchle would wear a face covering.[30]

---

[23] *Id.*
[24] *Id.* ¶ 56.
[25] *Id.* ¶¶ 57-58.
[26] *Id.* ¶ 58.
[27] *Id.* ¶¶ 59-62.
[28] *Id.* ¶ 62.
[29] *Id.* ¶ 63
[30] *Id.*

On May 5, 6, and 7, 2021, Lauchle reported to work, refused to wear a face covering or seek an accommodation, and was sent home.[31] On May 10, UPS terminated Lauchle's employment after she, again, reported to work and refused to wear a face covering or seek an accommodation.[32] That same day, Lauchle filed another grievance, again asserting that UPS violated a provision of the CBA which prohibited termination of an employee without just cause, as well as a provision regarding the filing and adjudication of grievances.[33] As with her previous grievance, Lauchle did not claim that UPS violated provisions of the CBA which prohibited discrimination.[34] On June 2, 2021, the Panel upheld Lauchle's termination.[35] That same day, the Panel also upheld terminations of Lauchle's daughter and son-in-law, after each had been terminated for the same reasons—refusal to comply with UPS' face covering policy—and gone through the same grievance process.[36]

B.    **Procedural History**

Lauchle initiated this litigation with the filing of a Complaint against UPS on April 11, 2022.[37] Discovery ensued, the deadline for which the Court granted a request to extend three months, then denied a subsequent request for a six-month

---

[31] *Id.* ¶¶ 64-66.
[32] *Id.* ¶¶ 67-68.
[33] *Id.* ¶¶ 69-70.
[34] *Id.* ¶ 70.
[35] *Id.* ¶ 74.
[36] *Id.* ¶¶ 75-95.
[37] Compl., Doc. 1.

extension.[38] Following the close of discovery, UPS filed a Motion for Summary Judgment which is fully briefed and ripe for disposition.[39]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." As expressed by the Supreme Court of the United States in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[40] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[41]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[42] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth

---

[38] *See infra* Section III.B.
[39] Mot. Summ. J., Doc. 28; Supp. Br. ("BIS"), Doc. 30; Opp'n ("BIO"), Doc. 34; Reply, Doc. 36.
[40] 477 U.S. 317, 322 (1986).
[41] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[42] *Celotex*, 477 U.S. at 323.

"genuine factual issues that properly can be resolved by only a finder of fact because they may reasonably be resolved in favor of either party."[43] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[44] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[45]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[46] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[47] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[48] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[49]

---

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[44] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[45] *Port Auth. Of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[46] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 422, 448 (1871)).
[47] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[48] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[49] Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

### A. Local Rule 56.1

Local Rule 56.1 requires all motions for summary judgment to be "accompanied by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The party opposing summary judgment must then include with its papers an answer to the movant's statement of facts in which it identifies, in corresponding numbered paragraphs, those material facts which the nonmovant contends there is a genuine issue to be tried.[50] "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."[51] Material facts in the movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."[52]

UPS's Statement of Material Facts largely conforms with Local Rule 56.1. With few exceptions,[53] each numbered paragraph includes record citations in support. The Court will deem those paragraphs which do not contain any record citations stricken.[54] As to the balance of UPS' SMF, the Court looks to Lauchle's

---

[50] LR 56.1.
[51] Id.
[52] Id.
[53] SMF ¶¶ 4, 75, 86, 103.
[54] See Weitzner v. Sanofi Pasteur, Inc., No. 3:11-CV-02198, 2017 WL 3894888, at *4 (M.D. Pa. Sept. 6, 2017), aff'd, 909 F.3d 604 (3d Cir. 2018) (observing that it is within the courts

Reply to UPS' Statement of Material Facts[55] to determine which material facts, if any, she contends there is a genuine issue to be tried.[56] The Court accepts as stated the facts to which Lauchle admits.[57] Regarding those which Lauchle admits only in part or denies, the Court then "look[s] to the parts of the record cited by each party and make[s] its own determination."[58]

It is here where the process breaks down. Nowhere in Lauchle's RSMF does she include any citations to the record. Even if the Court were to overlook that deficiency, most of Lauchle's RSMF statements are otherwise improper. For instance, Lauchle denies various paragraphs of UPS' SMF on the grounds that she "is without information sufficient to form a belief to the truth or falsity of the averments contained in" the corresponding SMF paragraphs.[59] While this may be an appropriate response prior to the close of discovery, it is not at this late stage in the litigation. Summary judgment is the time for facts and evidence. Lauchle cannot survive a motion for summary judgment because discovery failed to produce evidence sufficient for her to form a belief as to material facts regarding her claims or UPS' defenses.

---

    discretion to strike non-compliant statements of fact) (citing *Hartshorn v. Throop Borough*, No. CIV.A. 3:07-CV-01333, 2009 WL 761270, at *8-9 (M.D. Pa. Mar. 19, 2009)).
[55] Lauchle Reply to Statement of Material Facts ("RSMF"), Doc. 35.
[56] LR. 56.1.
[57] *Williams v. Pennsylvania State U.*, No. 4:20-CV-00298,--- F. Supp. 3d ----, 2023 WL 6626789, at *3 (M.D. Pa. Oct. 11, 2023).
[58] *Id.*
[59] *E.g.*, RSMF ¶¶ 10, 11, 14, 19, 23, 39, 44-46, 48, 52-53, 56, 63-66, 72-73, 76-84, 87-94, 107-108, 114-115.

Lauchle also denies "as stated" several paragraphs of UPS' SMF on the grounds that "the document [cited by UPS] speaks for itself."[60] Courts have "been attempting to listen to such written materials for years (in the forlorn hope that one will indeed give voice)—but until some such writing does break its silence," parties are required to do the talking and, *ahem*, say for themselves what it is that they mean to contest in their opponents' statement.[61] The Court assumes that Lauchle's failure to do so, as well as her obstinate assertions that she cannot form a belief about much of the record evidence, simply means that she "would prefer not to admit something that is [stated] about a document" or is "too lazy to craft an appropriate response."[62] Neither is an acceptable basis for her unsupported denials.

"[T]he proper sanction for violating Rule 56.1 is within the district court's discretion."[63] In determining the proper sanction, the Court is mindful of Rule 56.1's purpose, which is to "enable 'the court to identify contested facts expeditiously.'"[64] Not only does her RSMF not serve this purpose, it seems likely that Lauchle's

---

[60] *E.g.*, *id.* ¶¶ 34-38, 49-50, 59-62, 70, 101.
[61] *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001).
[62] *Id.*
[63] *Hickey v. Merritt-Scully*, 18-cv-01793, 2021 WL 949448, at *2 (M.D. Pa. Mar. 12, 2021) (citing *Weitzner*, 909 F.3d at, 614).
[64] *Williams*, 2023 WL 6626789, at *4 (quoting *Park v. Veasie*, No. 3:09–CV–2177, 2011 WL 1831708, at *3 (M.D. Pa. May 11, 2011); *Pinegar v. Shinseki*, 1:07–CV–0313, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009)).

11

counsel has failed to meet his obligations under Federal Rule of Civil Procedure 11.[65] Accordingly, the Court will deem the entirety of UPS' SMF admitted.[66]

### B.   Discovery Extension

Lauchle suggests that the Court defer considering or deny UPS' motion under Federal Rule of Civil Procedure 56(d) which states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Lauchle has not provided any affidavit or declaration, let alone one which shows why she cannot present facts essential to justify her opposition. Further, Lauchle's suggestion that discovery closed prematurely is not well taken.[67]

On June 26, 2023, the Court granted an unopposed motion by Lauchle to extend the discovery deadline three months, from July 3, 2023 to October 3, 2023.[68] Lauchle requested another extension, purportedly due to the need to take additional depositions, on October 24, 2023,[69] which the Court denied.[70]

---

[65]  *Infra* Section IV.
[66]  *See Weitzner*, 909 F.3d at 613 ("Where an opposing party fails to object in its answer, those facts in the party's statement are considered admitted.") (citing LR 56.1).
[67]  BIO 3.
[68]  June 26, 2023 Ord., Doc. 16.
[69]  Mot. to Amend Case Management Ord., Doc. 21.
[70]  Nov. 16, 2023 Ord, Doc. 24.

Opposing Lauchle's second request for an extension, UPS detailed Lauchle's dilatory approach to discovery.[71] The Court's initial Case Management Order, issued on August 16, 2022, set a July 3, 2023 deadline for fact discovery.[72] Lauchle did not issue her first discovery request until March 22, 2023—seven months after the commencement of discovery and less than four months before the deadline.[73] Lauchle did not notice her first deposition until June 6, 2023, less than a month before the close of discovery.[74] Despite now claiming that discovery closed before she had the opportunity to take additional depositions, correspondence from Lauchle in May 2023 made clear that she was aware of the identity of the additional individuals she wished to depose months prior to the discovery deadline.[75]

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." The United States Court of Appeals for the Third Circuit has instructed that the "good cause" inquiry "focuses on the moving party's burden to show due diligence."[76] Accordingly, "if the moving party 'was not diligent, there is no 'good cause' for

---

[71] Opp'n. Mot. to Amend, Doc. 23.
[72] Aug. 16, 2022 Ord., Doc. 11.
[73] Mar. 22, 2023 Email, Doc. 23-1 Ex. 3.
[74] June 6, 2023 Email and Letter, Doc. 23-1 Ex. 5.
[75] May 22, 2023 Letter, Doc. 23-1 Ex. 7.
[76] *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *accord Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

13

modifying the scheduling order'"[77] and "the inquiry should end."[78] Discovery must come to an end, and Lauchle's lack of diligence was no reason to extend the deadline a second time, nor is it a reason to reopen it now.

### C. Discrimination

Lauchle brings claims of sex and religious discrimination under the Pennsylvania Human Relations Act[79] and Title VII of the Civil Rights Act.[80] The same standards govern each claim:[81] Absent proof of purposeful discrimination, Lauchle must show (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination.[82] UPS concedes all but the last requirement.[83] Therefore, whether Lauchle can state a *prima facie* case of sex or religious discrimination turns on whether the circumstances of her termination give rise to an inference of discrimination.

---

[77] *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (quoting *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 701 (E.D.Pa.2007)).
[78] *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992).
[79] 43 Pa. C.S. § 951 *et seq.*
[80] 42 U.S.C. § 2000e-2(a).
[81] *McNeill v. Greyhound Lines, Inc.*, 628 Fed. Appx. 101, 103 n.1 (3d Cir. 2015) (citing *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 409 (3d Cir.1999)).
[82] *Jones v. S.E. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015).
Lauchle could also state a claim for religious discrimination by showing that "(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *E.E.O.C. v. GEO Group, Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (quoting *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009)). However, Lauchle concedes that she never informed UPS of any such conflict. SMF ¶¶ 101-102.
[83] BIS 6.

"Discrimination may be inferred based on comparator evidence—evidence that defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff."[84] The record is devoid of any such evidence. Lauchle identified thirteen purportedly similarly situated individuals who were treated more favorably.[85] Five of those thirteen were women.[86] Of those thirteen, she could only identify the religious affiliation of two of her identified comparators; a Muslim and an individual who attended her church at some point in the past.[87] Lauchle's claims that the Muslim individual was not terminated despite refusing to wear a mask and walking off of the job were refuted by the president of Lauchle's union.[88] Therefore this individual is not a sufficient comparator, leaving only the individual who shares a religious affiliation with Lauchle.

There is no evidence in the record from which a reasonable jury could conclude that Lauchle was discriminated against. Her claims of sex discrimination rest on allegations that certain individuals, "including men," were not fired for disregarding UPS' mask policy.[89] Her claims of religious discrimination rest on her assertion that she is Christian and that she was fired, therefore she must have been

---

[84] *Darby v. Temple U.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x. 879, 881 (3d Cir. 2011)).
[85] SMF ¶ 104.
[86] *Id.* ¶¶ 105-106. *Cf.* BIO 7 ("Lauchle has provided names of individuals, including men that were treated better than herself in that they were allowed to work without a mask being worn properly.").
[87] SMF ¶ 110.
[88] *Id.* ¶ 114.
[89] *Supra* n.86.

15

fired because she is Christian. She notes that two other members of her church—who are both members of her family, and one of whom is a man—were fired.[90] But, she ignores that UPS continued to employ other members of her church.[91]

Despite Lauchle's unsupported, conclusory assertions to the contrary, the record is clear that Lauchle was fired because she repeatedly refused to wear a mask. After a favorable arbitration ruling reinstated her employment on the condition that she comply with the policy or seek an accommodation, she did neither. She was, once again, fired for that reason. Her dissatisfaction with that outcome does not support her claims of discrimination.

## IV.  SHOW CAUSE ORDER

Federal Rule of Civil Procedure 11(b)(1) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

As noted above, *forty* of the 112 paragraphs of Lauchle's RSMF state that she is "without information sufficient to form a belief as to the truth or falsity of the averments" in the corresponding SMF paragraph.[92]

---

[90] BIO 8-9.
[91] SMF ¶ 116.
[92] *Supra* n.53. This excludes the four paragraphs the Court deemed stricken from UPS' SMF; Lauchle also claimed to lack information sufficient to form a belief regarding three of those

16

For instance, during her deposition Lauchle testified that two of her children worked for UPS as of May 2023.[93] In her RSMF, Lauchle states that she now cannot say whether that was the case.[94] The same is true of her testimony that several members of her family are active members of her church.[95] And her testimony regarding the grievance resolution process she went through.[96] And her testimony that her son-in-law filed a grievance challenging his own termination and refused to comply with a Panel ruling directing him to comply with UPS' face covering policy.[97]

When asked if she could recall when her daughter, Abigail, was terminated from UPS, she testified "I believe it was, like, around May 5th. 3rd, 5th."[98] Now, Lauchle is apparently unable to form a belief as to whether Abigail worked with her, and if she was terminated on May 5th.[99] Lauchle is also apparently unable to form a belief regarding whether the April 12, 2020 Form required her to provide proof of any underlying medical condition that prevented her from wearing a mask despite having signed the form and testifying that it did not require such proof.[100] Nor can

---

statements' veracity. SMF and RSMF ¶¶ 4, 75, 86. Citations to the SMF and RSMF together refer to the corresponding paragraphs from each parties' statements.

[93] Lauchle Dep. 11:5-23.
[94] SMF and RSMF ¶ 10.
[95] *Id.* ¶ 11.
[96] *Id.* ¶ 46.
[97] *Id.* ¶¶ 79, 82.
[98] Lauchle Dep. 14:11-14.
[99] SMF and RSMF ¶¶ 87-92.
[100] Lauchle Dep. 49:7-24, Ex. 5.

17

Lauchle form a belief regarding the basis of the grievance she filed challenging her initial termination.[101] Or whether she repeatedly refused to wear a mask in the days leading up to her second termination.[102]

It strains credulity that Lauchle truly cannot form a belief regarding the veracity of these statements. On the contrary, she plainly *has* formed a belief regarding many of the statements. And yet, Lauchle's counsel, Gregory Stapp, Esquire, submitted on Lauchle's behalf a filing stating just the opposite.

Any definition of "inquiry reasonable under the circumstances" must include reviewing the deposition transcript of one's client. The failure to do so here is no mere procedural violation. To the extent that Lauchle's claims were meritorious, the failure to adequately respond to UPS' Statement of Facts, resulting in the entirety of UPS' Statement being deemed admitted and obliging the Court to accept UPS' version of events, effectively resulted in the forfeiture of those claims.[103]

Therefore, Mr. Stapp will be required to show cause why he should not be sanctioned for an apparent violation of Rule 11. The Court also cautions Mr. Stapp that the Court is unlikely to find persuasive any argument or suggestion that his client was unable to form a belief as to a third of UPS' Statement of Facts due to the denial

---

[101] SMF and RSMF ¶¶ 44-45.
[102] *Id.* ¶¶ 63-66.
[103] On the other hand, if Mr. Stapp did not believe Lauchle's claims were meritorious, that raises its own Rule 11 issues.

of her request to extend discovery, as that would not impact Lauchle's ability to form beliefs as to things she has affirmatively testified to during a deposition.

## V. CONCLUSION

For the foregoing reasons, Defendant United Parcel Services' Motion for Summary Judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge